UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHANIQUA E. CUNNINGHAM,

                Plaintiff,

  v.                                            **DECISION AND ORDER**
                                                           13-CV-934S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.     Plaintiff Shaniqua E. Cunningham challenges an Administrative Law Judge's ("ALJ") decision, dated November 22, 2011, wherein the ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. She now contends that this determination is not based upon substantial evidence, and reversal is warranted.

2.     Plaintiff protectively filed an application for a period of disability and disability insurance benefits on May 28, 2010, and an application for supplemental security income on May 31, 2010. In both applications, she alleged a disability beginning on December 31, 2008. The applications were initially denied on August 31, 2010, and Plaintiff was granted a hearing on the denial. She testified before the ALJ on November 9, 2011. The ALJ issued a decision denying Plaintiff's applications on November 22, 2011. The Appeals Council denied Plaintiff's request for review on July 23, 2012, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on September 17, 2013.

3.     Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment

on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

     4.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

     5.    To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of

Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national

economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since December 31, 2008, her alleged onset date (R. 17);[1] (2) Plaintiff's single-episode major depressive disorder, mild mental retardation, learning disorder, and an anxiety-related disorder were severe impairments (R. 17); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 18); (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with certain non-exertional limitations (R. 19-21); and (5) although she had no past relevant work, considering her age, education, experience, and RFC, there were sufficient jobs in the national economy that she could perform. (R. 21.)

10. Plaintiff first argues that the ALJ erred at step 3 of his analysis in finding that Plaintiff did not meet the criteria of Listing 12.05(B) for mental retardation. Alternatively, she claims that remand is warranted because the ALJ's step 3 analysis is not supported by substantial evidence. (Pl's Mem of Law at 12-18.)

Listing 12.05 in Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P defines "mental retardation" as "a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." To establish a disability of mental retardation under listing 12.05(B), a claimant must

---

[1] Citations to the underlying administrative record are designated as "R."

establish "[a] valid verbal, performance, or full scale IQ of 59 or less." To establish a disability of mental retardation under listing 12.05(C), a claimant must establish "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Here, in assessing the "B" and "C" criteria of Listing 12.05,[2] the ALJ determined that they were not met because Plaintiff did not have a valid verbal, performance, or full scale IQ of 59 or less, and because she did not have a valid verbal performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. (R. 19.) Plaintiff maintains that the ALJ's determination was erroneous because consultative examiner Renee Baskin, Ph.D. assessed that Plaintiff had a full scale IQ score of 57. (Pl's Mem of Law at 12-18; Pl's Reply at 1-2.) As discussed below, however, the ALJ reasonably discounted this score.

The record reflects that Dr. Baskin performed a standardized intelligence measure WAIS-IV test on Plaintiff in July 2010, which yielded a full scale IQ score of 57. (R. 270.) With respect to this score, Dr. Baskin noted that while the rest results were "valid and reliable," she was skeptical of the low score due to "the claimant's nervousness [with] the testing." (R. 19, 270.) Notably, the low test score was inconsistent with the other substantial evidence in the record that showed, overall, that Plaintiff suffered from some cognitive deficits but that these deficits resulted in only mild to moderate functional limitations. For instance, after conducting the WAIS-IV test in July 2010, Dr. Baskin herself concluded that Plaintiff's cognitive limitations did not preclude her ability to function in

---

[2] The Court notes that the ALJ also analyzed the "A" and "D" criteria of Listing 12.05 in his decision. (R. 18-19.) In her moving papers, however, Plaintiff only challenges the ALJ's analysis of the "B" and "C" criteria of Listing 12.05. See Pl's Mem of Law at 12-18.

certain work environments. (R. 271.) This was consistent with the opinion of State Agency consultant L. Blackwell who reviewed the evidence in the file and concluded that Plaintiff could follow simple directions and complete simple tasks at a reasonable pace, interact appropriately with supervisors and co-workers and adapt to changes in a low-stress work environment. (R. 274.) Further, Blackwell specifically opined that "[t]he evidence in the record does not support a diagnosis of mental retardation." (R. 274.) Additionally, Plaintiff reported that she was able to manage her own money, do simple math, use public transportation, and follow spoken instructions -- i.e., activities that require varying degrees of cognitive functioning. (R. 39-40, 170-173.) The ALJ, therefore, reasonably discounted Plaintiff's IQ score.

Even assuming arguendo that Plaintiff met the IQ requirement of Listing 12.05(B) and/or (C), she must also establish that she had related "deficits in adaptive functioning" that arose prior to age 22. Indeed, as Plaintiff points out, "[a]daptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life," such as a claimant's effectiveness in areas of social skills, communication, and daily living skills. Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012) (internal quotation marks and brackets removed); see also Bertram v. Colvin, No. 6:11-CV-1505, 2013 WL 2403668, *2 (N.D.N.Y. May 31, 2013). Here, as the ALJ noted, Plaintiff failed to make such a showing given that she exhibited "good adaptive functioning skills" which were evidenced by her prior work history (R. 19, 30-32), and her ability to manage a household by partaking in activities such as independently dressing and bathing herself, managing money, cooking, traveling outside her home alone and using public transportation. (R. 19, 30-34, 168-176.)

Plaintiff argues, nonetheless, that the ALJ's analysis is flawed because he ignored the evidence in the record that showed that Plaintiff exhibited poor adaptive functioning in

certain areas. (Pl's Mem of Law at 13-15; Pl's Reply at 2-3.) In support of this contention, Plaintiff points out, for instance, that she needed assistance with various daily activities, and was unable to pick her children up from school or shop in a grocery store. (Pl's Mem of Law at 14.) The Court finds this argument unavailing for several reasons. First, an ALJ is not required to mention every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. See Mongeur, 722 F.2d at 1040. Second, the evidence related to Plaintiff's ability (or alleged lack thereof) to perform daily activities does not necessarily support her position that she exhibited "deficits in adaptive functioning," as the Second Circuit has defined that term. To be sure, while Plaintiff indeed reported that she sometimes needed reminders to groom and bathe herself, she also reported that she was able to perform these activities on her own. Similarly, while Plaintiff reported that she often needed assistance cooking and could not remember ingredients, she also reported that she is able to cook simple meals herself such as macaroni and cheese and pork chops. Finally, the Plaintiff's contention that her inability to pick her children up from school and/or shop in a grocery store demonstrate that she has "deficits in adaptive functioning" is equally meritless. (Pl's Mem of Law at 14; Pl's Reply at 2-3.) This is so because Plaintiff admitted at the hearing (R. 35-37) that the inability to perform these tasks was attributable to her anxiety, not a cognitive inability to do so. See Talavera, 697 F.3d at 153 (explaining that "deficits in adaptive functioning" must be "from [the plaintiff's] cognitive limitations, rather than from a physical ailment or other infirmity.

Accordingly, the Court finds that the ALJ's Step 3 analysis is proper as a matter of law, and is supported by substantial evidence in the record.

11. Plaintiff also argues that remand is warranted based on the ALJ's failure to

properly weigh the medical opinions of consultative examiner Baskin and State Agency consultant Blackwell, or explain why he rejected them when assessing Plaintiff's RFC. (Pl's Mem of Law at 18-22.)

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." Stanton v. Astrue, No. 07-CV-803, 2009 WL 1940539, *9 (N.D.N.Y. June 4, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), aff'd, 370 Fed. Appx. 231 (2d Cir. 2010).

In this case, after consideration of the entire record, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: she cannot understand, remember or carry out complex and detailed tasks. She can occasionally interact with the public, but has no limitations on interacting with co-workers and supervisors. The claimant should not be in jobs where the training or job duties would require reading." (R. 19.) This determination was supported by the opinions of consultative examiner Dr. Baskin and State Agency consultant Blackwell. Indeed, the opinions of consultative physicians and State Agency consultants can constitute substantial evidence where, as here, their opinions are consistent with the other evidence in the record. See Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); see

also Mongeur, 722 F.2d at 1039.

Specifically, Dr. Baskin performed a consultative examination of Plaintiff on July 29, 2010 and concluded that Plaintiff had minimal to no limitation in her ability to perform simple tasks independently and maintain attention and concentration. (R. 266.) Similarly, Dr. Blackwell reviewed the evidence in the record in August 2010 and opined that Plaintiff could follow simple directions and complete simple tasks at a reasonable pace, interact appropriately with supervisors and co-workers and adapt to changes in a low-stress work environment. (R. 274).

As the ALJ discussed in his decision, the opinions of Dr. Baskin and Blackwell were consistent overall with the other evidence in the record.  For instance, the ALJ noted that Plaintiff received limited mental health treatment during the relevant period and that her mental condition was managed through the use of psychotropic medication. (R. 19-20, 232-233). The ALJ also pointed out that Plaintiff's mental status examinations throughout 2010 and 2011 were either entirely unremarkable or revealed only mild findings. (R. 19-20, 259, 261-262, 330, 332-334.)  As the ALJ noted, by July 2011, Plaintiff's mental health treatment notes show that Plaintiff's condition had "improved overall" and that she was discharged in September 2011.  At that time, she was assessed with a Global Assessment Functioning ("GAF")[3] score of 54, indicating only moderate functional limitations. (R. 19-20, 352-354.)  Further, Plaintiff testified at the hearing that she was previously employed as a meatball temperature tester, as a "carry-out person" at a grocery store, and at a hotel. According to her, she lost these jobs only because she "was not a very strong reader" and

---

[3] A GAF is a scale from 0 to 100 that may be used to report a clinician's judgment of an individual's overall symptom severity and the level of his or her functioning.  A GAF score of 51-60 indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning. See Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV–TR, at 34 (4th ed., rev. 2000).

because her "spelling" was generally poor.  (R. 32-33.)

Despite the above discussion, Plaintiff claims that the ALJ's RFC analysis is flawed because the ALJ failed to properly weigh and consider the consultative opinions of Baskin or Blackwell, pursuant to the Regulations.  (Pl's Mem of Law at 19-23).  The Court finds no merit to this argument.  Consultative examiners and State Agency consultants, such as Dr. Baskin and Blackwell, are "acceptable medical sources," 20 C.F.R. §§ 404.1520, 416.902, whose findings must be evaluated "using all of the applicable rules in 20 C.F.R. §§ 404.1527 and 416.9273 to determine the weight to be given to the opinion," SSR 96-5p, at *16 (1996).  The regulations expressly provide that the ALJ will "give good reasons in [the] notice of determination or decision for the weight [given to a medical] source's opinion."  20 C.F.R. § 404.1527(c)(2).

Here, while the ALJ did not explicitly assign a weight to Dr. Birkin's opinion, he did discuss it and cite to it in his decision.  (R. 20.)  With respect to Blackwell's opinion, the ALJ did not, as Plaintiff points out and the Commissioner acknowledges, assign a weight or even so much as discuss or cite to his report.  Nonetheless, the Court finds no basis for remand on this basis because it is clear from the face of the decision that the ALJ credited these opinions and relied upon them, to the extent they were consistent with and supported by the other evidence in the record, when formulating Plaintiff's RFC (see discussion above).  See Mongeur, 722 F.2d at 1040 (An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record "permits us to glean the rationale of an ALJ's decision.").  Moreover, and in any event, even if the ALJ erred in failing to expressly assign a weight to either or both opinions, such error was harmless insofar as it would not have affected the ALJ's disability determination insofar as the opinions of Dr. Baskin and Blackwell were consistent with the other evidence in the record that the ALJ

discussed.  See e.g., Ryan v. Astrue, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009).

Plaintiff also challenges the ALJ's RFC finding on the basis that the ALJ failed to "fully" incorporate the opinions of Birkin and Blackwell into his RFC assessment, and also failed to reconcile various alleged "inconsistencies" between these opinions.  (Pl's Mem of Law at 20-23.)  These arguments fail.  Initially, as noted above, an ALJ is not required to discuss every piece of evidence in the record or reconcile every inconsistency in the record.  See Mongeur, 722 F.2d at 1040.  Second, Plaintiff has not pointed to any material inconsistency between the two opinions.  Moreover, while Dr. Birkin and Blackwell completed reports that were clearly not identical in form and/or substance, they both arrived at the same conclusion:  that while Plaintiff's cognitive and/or mental impairments resulted in some functional limitations, these impairments did not prevent her from performing work altogether.  (R. 271, 274.)

12.	For the foregoing reasons, and upon a review of the record as a whole, the Court concludes that the ALJ's determination is supported by substantial evidence.  Defendant's Motion for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:	November 20, 2014
	Buffalo, New York

                                         /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                             Chief Judge
                                      United States District Court